716 F.2d 570
 Alfred H. KALLAND, Personal Representative of the Estate of
Marvin Kalland and Sharline Kalland, deceased, and
Guardian of Klarie Kalland and Keith
Kalland, Minors, Plaintiffs-Appellees,
v.
NORTH AMERICAN VAN LINES, a corporation, and Little Audrey
Lines, a corporation, Defendants-Appellants,
and
Vernell L. Jackson, United Van Lines, a corporation; Sten
V. Karlsson and Clifford W. Pulec, Defendants-Appellees.
 Nos. 81-3678, 81-3689.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1982.
Decided Sept. 1, 1983.
 
 Richard Ranney, Shelton C. Williams, Missoula, Mont., for plaintiffs-appellees.
 Gary L. Graham, Garlinton, Lohn & Robinson, Ronald A. Bender, Worden, Thane & Haines, Missoula, Mont., for defendants-appellants.
 Appeal from the United States District Court for the District of Montana.
 Before KILKENNY, KENNEDY, and SKOPIL, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 The issue of primary interest in the appeal is whether in a comparative negligence case the trier of fact should assess damages for an indivisible injury by an apportionment equal to degrees of causal responsibility, in addition to an apportionment based on degrees of negligence. We hold that causal apportionment is incorrect and reverse that part of the judgment inconsistent with our holding. Montana law applies in this diversity suit, but it appears the principles we set forth are in accord with the general rule in comparative negligence jurisdictions.
 
 
 2
 This case arises out of a multi-vehicle collision which caused the deaths of three persons, severe personal injuries to a fourth, and extensive property damage. The collision occurred because of winter conditions on Interstate 90, westbound on a two lane freeway about 14 miles from Missoula, Montana. Ice covered portions of the highway and fog reduced visibility at some points. The initial cause of the collision was a North American Van Lines tractor-trailer (NAVL). When a car ahead of it began to swerve, the NAVL truck applied its brakes, causing it to skid and jackknife, stopping at right angles to the traffic and blocking both westbound lanes. Three smaller vehicles crashed into the NAVL truck, a Ford Econoline van, a Jeep Wagoneer, and a GMC pickup.
 
 
 3
 Two more trucks became involved. A United Van Lines truck (UVL) approached the accident and, to avoid hitting some disembarked passengers on the side of the road, deliberately jackknifed. The UVL trailer hit the three small vehicles, but with minimal force; the trailer came to rest roughly parallel to the NAVL trailer. Now the UVL trailer was the initial block on the highway. The Wagoneer and the GMC pickup were between it and the NAVL truck, the Ford Econoline being off to one side of the road. A Little Audrey Lines moving van (LAL) driving westbound crashed into the middle of the stalled UVL trailer with a force that crushed the Jeep Wagoneer and the GMC pickup between the UVL trailer and the NAVL trailer. In addition to the crash impact, fire and smoke enveloped the Wagoneer, though it is not clear when the fire began.
 
 
 4
 Before explaining the damages sustained and the comparative fault findings, we turn to the trial court's conclusion regarding the negligence of the drivers.
 
 
 5
 The trial court found the NAVL driver negligent, and we reject without difficulty NAVL's contention that its driver was blameless. The trial court found that the NAVL driver applied brakes unnecessarily in the face of a known risk of jackknife on an icy highway with poor visibility. The trial court reasoned that "[a]ny prudent truck driver driving a tractor and trailer in the winter in Montana is bound to know that any application of brakes on an icy surface is apt to cause a jackknife." The swerving passenger car had already passed 65 feet ahead of the NAVL truck and was traveling faster than it was. To risk "jackknifing and blocking the whole of a busy highway which was covered with ice at a place where visibility was poor because of fog," the court concluded, was negligent. Argument whether or not fog had set in when the brakes were applied is unimportant, as the driver admitted knowing that adverse weather conditions were imminent from radio communications with other vehicles.
 
 
 6
 The UVL van, whose driver caused a deliberate jackknife to avoid hitting passengers on the side of the road, was found not negligent. This finding is not contested on appeal.
 
 
 7
 As to LAL, the finding of negligence on the part of its driver is also well-supported by the record. The LAL truck proceeded in the face of radio warnings for westbound traffic to stop and, according to some expert testimony, its speed was estimated from 30 to 55 miles per hour. The trial court's finding of negligence by LAL was not clearly erroneous.
 
 
 8
 Negligence on the part of the drivers of the three smaller vehicles has not been made an issue on appeal, so we are left with the proposition that the two negligent drivers were the first and the last, the NAVL truck which initially blocked the highway, and the LAL truck in the final crash.
 
 
 9
 The remaining question is the allocation of damages for property loss to the three trucks and the more serious matter of damages for death and injury to the occupants of the Wagoneer, who were the Kalland family. Three of the Wagoneer's occupants, Marvin, Sharline, and Kathie Kalland, were killed, and one Klarie Kalland was seriously injured.
 
 
 10
 The Kallands had not managed to exit from the Wagoneer between the time they ran into the NAVL truck and the time they were crushed by impact of the LAL truck. From this, and certain medical evidence, the trial court found that the driver, Marvin Kalland, was dead before the LAL truck hit it. It follows that NAVL was responsible for 100 percent of the damages from Marvin Kalland's wrongful death. The court found the other two deaths and the personal injury were the result of the combined crashes, the joint fault of NAVL and LAL. These findings are supported by the record.
 
 
 11
 The trial court assigned 25 percent of the negligence to NAVL and 75 percent to LAL, but it did not use this ratio as the sole basis for allocating damages. Before applying the percentages, the trial court attempted a separate calculation of causal responsibility. It reasoned that NAVL set up the crash by blocking the highway first. The trial judge stated "I conclude, and this conclusion is arbitrary, that the initial impact contributed one-half to [the deaths and personal injuries] and that the subsequent impact and the accelerated fire contributed one-half." Accordingly, the court allocated 50 percent of all damages to NAVL for the first impact and applied the percentage based on the comparative negligence of both parties only to the remaining 50 percent for the second impact. Thus, damages for deaths and injuries were apportioned as follows:
 
 
 12
 NAVL LAL
 ----- -----
Marvin Kalland 100% 0%
Sharline, Kathie,
 and Klarie Kalland 62.5% 37.5%
 
 
 13
 The parties on appeal in part argue that the causal allocations are incorrect, each party attempting to shift greater responsibility to the other. NAVL argues that the initial collision was minimal and that the LAL truck did most of the damages, and LAL argues the opposite. Those contentions, however, are quite beside the point; for it was error to make separate allocation of causal responsibility between the first and second impact, and to apply the comparative negligence ratio to the second impact only. Where injuries can properly be apportioned to separate causes based on evidence in the record, there is no occasion to invoke the doctrine of comparative negligence; and if injuries cannot be separately apportioned, then the comparative negligence ratio controls, unaltered by some independent assessment of degree of causation. The whole point of comparative negligence is that the relation between injury and cause cannot be accurately determined, and an allocation based on the degree of negligence of each party becomes the measure of liability. Thus, NAVL justifiably takes issue with the trial judge's method of apportionment, which caused NAVL to bear 62 1/2 percent of the liability when its comparative negligence was 25 percent.
 
 
 14
 Our ruling follows the language of Montana's apportionment statute and comparative negligence principles generally. The Montana law provides that where two tortfeasors have jointly produced an indivisible injury the damages are to be apportioned among them according to their respective degrees of negligence. Sec. 27-1-703(1) MCA. This is in accordance also with the general rules applicable to comparative negligence. "An injury is indivisible if it is incapable of division on any logical or reasonable basis." Restatement (Second) of Torts, 433(a). When it is practically impossible to decide which tortfeasors caused the determinate injuries, an injury must be treated as indivisible even if we know that different tortfeasors probably caused different parts of it. Azure v. City of Billings, 182 Mont. 234, 596 P.2d 460, 470 (1979); Smith v. Fiat-Roosevelt Motors, Inc., 556 F.2d 728 (5th Cir.1977); Higginbotham v. Ford Motor Co., 540 F.2d 762 (5th Cir.1976). It is not proper, therefore, to make a separate assignment of fault based on initial causation when damages from a single cause cannot be ascertained. The case of Marvin Kalland illustrates the principle. There is sufficient evidence to support the trial court's finding that his death was caused entirely by the first collision, so NAVL's 100 percent responsibility is clear. In the case of the other two deaths and the personal injuries in the Kalland vehicle, however, no causal allocation is possible, and the comparative negligence ratio controls.
 
 
 15
 The trial court made a similar error with respect to the property damage to the vehicles, though we do not find it necessary to set forth the specific percentages that it assigned to separate causes. It is obvious there was some damage to the NAVL truck from its initial skid and the impacts of three autos before the LAL van reached the scene. If there could have been an independent assessment of damages at that point, for instance testimony that a side panel of the truck was wholly destroyed by the first impact, then of course LAL would not be responsible for any part of that damage. As the case was developed at trial, however, there was no evidence to isolate damage resulting from the first impact. Accordingly, the comparative negligence ratio determines the respective liabilities of the parties.
 
 
 16
 The question remains whether to direct entry of judgment based on the comparative negligence findings of the district court. The record before us would support the trial court's determination to assign negligence in the ratios 25 percent NAVL and 75 percent LAL and to allocate damages accordingly. We cannot say with assurance, however, that the district court would have adopted the ratios it did were it faced with our ruling that an initial, separate assignment of causal percentages is improper. The degree of risk created by negligent conduct is a concern somewhat related to causal contribution, and the degree of risk is part of the calculation in a comparative negligence analysis. Here, where the district court attempted an initial assignment of liability based on causal contribution, it might have eliminated the degree of risk from its negligence calculation, attempting instead to define negligent conduct solely by reference to elements of driving fault such as failure to heed warnings, speed, and improper brake application. Accordingly, we remand the case to the district court so that it has the opportunity either to revise its comparative negligence findings or to confirm them. We do not by the remand suggest that such revision is necessary.
 
 
 17
 UVL argues that since no issues are raised in the appeal which might adversely affect it, the appeal is frivolous within the meaning of 28 U.S.C. Sec. 1912 and Fed.R.App.P. 38. UVL objects that it is required to await the outcome of the appeal before receiving damages to which it is indisputably entitled. The argument overlooks that both NAVL and LAL made non-frivolous arguments regarding their respective shares of the liability. UVL's argument is not well taken. The case is remanded for further proceedings consistent with this opinion.
 
 
 18
 Each party shall bear its own costs.
 
 
 19
 Judgment VACATED and REMANDED.