No. 92-093

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

SIGRID M. GREYTAK,

    Plaintiff, Respondent and
    Cross-Appellant,

    -vs-

RegO COMPANY, a Delaware corporation;
and BUTLER MANUFACTURING COMPANY, a
Delaware corporation,

    Defendants an Appellants.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Norman L. Newhall, Floyd D. Corder, Alexander,
           Baucus & Linnell, Great Falls, Montana

      For Respondent:

           Ward Swanser, Moulton, Bellingham, Longo & Mather,
           Billings, Montana; William C. Callaham, Donahue &
           Callaham, Sacramento, California; J. Michael Jordan,
           Beirne, Maynard & Parsons, Houston, Texas

FILED

MAR 2 1993

Filed:

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: September 24, 1992
         Decided: March 2, 1993

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal of an order of the Thirteenth Judicial District Court, Yellowstone County. The order granted plaintiff's motion for a new trial and denied plaintiff's motion for judgment notwithstanding the verdict. Defendant appealed and plaintiff cross-appealed. Reversed in part, affirmed in part.

The issues raised by the appeal and cross-appeal are:

1.  Whether the District Court was correct in submitting the issue of assumption of risk to the jury.

2.  Whether plaintiff is entitled to a new trial because of alleged errors in the jury instructions.

3.  Whether affidavits of jurors are admissible to impeach the jury verdict by showing that the jury did not understand the jury instructions.

4.  Whether in viewing the evidence in the light most favorable to RegO, the jury could find that plaintiff voluntarily and unreasonably exposed herself to a known danger.

5.  Whether the District Court abused its discretion by granting a new trial on the grounds that the jury instructions contained an error in law.

In Winnett, Montana, on June 24, 1986, a spark ignited a basement full of propane. The resulting explosion completely demolished the house. Sigrid Greytak, who was in the basement, suffered serious burns in the explosion.

A 1060 gallon propane tank in the yard supplied propane to the house. The tank was manufactured in 1949 by Butler Manufacturing

2

Company. The company had equipped the tank with a model 3101CO valve made earlier in 1949 by Bastian-Blessing Company, RegO Company's predecessor in interest.

To operate that type of valve, a handwheel is turned until a seat disk inside the valve contacts the rim of a valve port. When the seat disk firmly contacts the rim, it seals the port so gasses cannot escape through the valve.

The valve contained a seat disk made of hard rubber. Greytak contends the valve was defective because the company should have used nylon instead of hard rubber as a seat disk material.

On June 22, 1986, Greytak closed the valve to shut off the flow of propane from the tank to the rental house. After turning off the valve, she assisted her father and another person in removing the propane-fired hot water heater. They did not cap the propane supply line after they removed the water heater.

Two days later, Greytak returned to the rental house to do some painting and to cap the open propane line. She smelled a strong odor of propane when she entered the house, so she went into the basement to investigate. She testified that the smell of propane was so strong in the basement it made her dizzy and almost overwhelmed her.

Greytak made several trips in and out of the basement during the next few hours. First, she went outside to make certain the propane valve was off. Then she went back into the basement and screwed the cap on the open propane supply line.

3

Greytak then tested the capped line for leaks by submerging the end of the line in a dish of soapy water and watching for bubbles. She testified that she knew there was a leak because bubbles appeared in the dish.

After Greytak went outside and cranked the handwheel on the valve tighter, she went back into the basement, tightened the cap and did a second test with the dish of soapy water. At trial, she testified that the line still leaked after she tightened the valve and cap.

She left the rental house and drove home to get a fan. When she returned she took the fan to the basement, plugged it in, and turned it on.

Later, Greytak went back into the basement and moved the fan closer to where the water heater had been. While she was adjusting the location of the fan, the propane exploded, reducing the house to rubble and engulfing Greytak in flames.

The jury found that the valve was defective and that the defect caused her injuries. Greytak did not recover damages, however, because the jury found that she assumed the risk and was 55 percent responsible for her injuries.

As a jury poll showed, nine jurors of the twelve juror panel determined that the valve was defective. Eight of the nine determined that the defect caused Greytak's injuries. Eleven jurors found Greytak had assumed the risk of her injuries.

Our review of a district court's conclusions of law is plenary. We determine whether the district court's conclusions are

4

correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

I.

Was the court correct in submitting the issue of assumption of risk to the jury?

In her cross-appeal, Greytak argues that as a matter of law she did not assume the risk. Greytak contends that because she testified she did not know of any defects in the valve assembly she could not assume the risk. We disagree for two reasons.

First, if the valve leaked Greytak surely knew about it. She testified that she turned the valve off, yet the basement filled with propane. She further testified that she tested the propane supply line twice and it was leaking both times.

Second, at the time Greytak's cause of action accrued, it was not necessary for a plaintiff to know of the specific defect before the defense of assumption of risk became operative. Rather, the plaintiff must have known of the particular condition that constituted the danger. See Kopischke v. First Continental Corp. (1980), 187 Mont. 471, 500, 610 P.2d 668, 683-84. As this Court has repeatedly held, the defense of assumption of risk applies upon a showing that the plaintiff knew of the danger, then both voluntarily and unreasonably exposed herself to the danger. Kuiper v. Goodyear Tire and Rubber Co. (1983), 207 Mont. 37, 64, 673 P.2d 1208, 1222; Zahrte v. Strum, Ruger & Co., Inc. (1983), 203 Mont. 90, 94, 661 P.2d 17, 18-19; Krueger v. General Motors (1989), 240 Mont. 266, 277, 783 P.2d 1340, 1347.

5

In this case, the dangerous condition was a basement full of propane. Two days before the accident, Greytak and her father removed a propane hot water heater from the basement. They left the propane line uncapped and the basement filled with propane.

On the day of the accident, Greytak returned to the rental house. She smelled propane when she entered the house. The smell of propane in the basement was so strong it made her dizzy and nearly overwhelmed her. She tested the propane line twice and testified that it leaked both before and after she tightened the valve on the tank outside.

Greytak testified she knew the accumulation of propane in the basement constituted a dangerous and hazardous condition. She testified she knew sparks could cause the propane to explode. She had been shocked by electrical appliances in the past. Although she testified that she did not know electric motors emit sparks when running, she had seen sparks fly when electrical cords were yanked from outlets.

Knowing of the danger, Greytak made several trips into the propane filled basement. On her final trip into the basement, two hours after discovering it was full of propane, the explosion occurred while Greytak was adjusting the location of an electric fan.

On this evidence, a jury could and did find that Greytak assumed the risk by voluntarily and unreasonably exposing herself to a known danger. The District Court's decision to submit the issue of assumption of risk to the jury was correct.

## II.

Is plaintiff entitled to a new trial because of alleged errors in the jury instructions on assumption of risk?

Greytak contends that question 3 of the special verdict forms and jury instructions numbered 22, 23, and 24 are not accurate statements of the law. Greytak's counsel objected generally to any instructions on assumption of risk and specifically to the substance of the first part of instruction 23. However, he did not object to the sufficiency of either the special verdict or the other instructions before the court submitted the case to the jury. As a result, Greytak waived the right to appeal based on the sufficiency of any instruction except the first part of instruction 23. See Rule 51, M.R.Civ.P; Ahmann v. American Fed. Savings & Loan Ass'n (1988), 235 Mont. 184, 195, 766 P.2d 853, 860; Reno v. Erickstein (1984), 209 Mont. 36, 46, 679 P.2d 1204, 1209.

Greytak also contends that the District Court should have given plaintiff's proposed instruction 27 instead of the court's instruction 23. We disagree. Only the first part of number 23 varies significantly from plaintiff's proposed instruction 27.

The court patterned instruction 23 after Montana Pattern Jury Instruction (MPI) 7.07 (Civil). Instruction 23 reads in pertinent part:

> The defendants claim Sigrid Greytak assumed the risk of her injury.
> In order to establish that claim, the defendants must prove (1) that Sigrid Greytak had actual knowledge of the danger, and (2) that Sigrid Greytak then voluntarily and unreasonably exposed herself to that danger.
>                                * * *

7

Greytak's proposed instruction differed from the court's instruction in that the proposed instruction required actual knowledge of the defect rather than knowledge of the danger in the defect. Greytak's counsel stated that the proposed instruction came directly from Krueger, 783 P.2d 1340. He argues that Krueger implies that knowledge of the danger actually means knowledge of the defect.

In Zahrte, this Court stated, "Plaintiff must have a subjective knowledge of the danger and then voluntarily and unreasonably expose himself to that danger before assumption of risk will become operative in a strict liability case." Zahrte, 661 P.2d at 18-19. In Krueger, we endorsed the language of Zahrte and MPI 7.07 as an accurate, comprehensible, and complete statement of the law in the case. 783 P.2d at 1347.

That portion of instruction 23 was an accurate statement of the law in this case and the remaining portion was nearly identical to plaintiff's proposed instruction 27. Therefore, the District Court did not err by giving instruction 23, rather than plaintiff's proposed instruction 27.

### III.

Are affidavits of jurors admissible to impeach the jury verdict by showing that the jury did not understand the jury instructions?

As we recently discussed, Rule 606(b), M.R.Evid., allows the use of juror affidavits to impeach the jury verdict only to show external influences on the jury. O'Leyar v. Callender (Mont.

8

1992), 843 P.2d 394, 309-10, 49 St.Rep. 1008, 1011. A juror may not impeach the verdict by testifying that, because the jurors misunderstood the jury instructions, the verdict had an unintended effect. In this case, there are no allegations of external influence on the jury. The District Court, therefore, properly granted defendant's motion to strike the juror affidavits.

## IV.

In viewing the evidence in the light most favorable to RegO, could a jury find that Greytak voluntarily and unreasonably exposed herself to a known danger?

Greytak argues that the court should have granted her motion for judgment notwithstanding the verdict because the evidence was insufficient to justify the verdict. The basis for Greytak's argument is essentially the same as her reasoning in the first issue—that she did not know the valve was defective. Greytak further argues that her actions, after discovering that her basement was full of propane, were negligence in attempting to rescue herself from the peril rather than assumption of risk.

"A judgment notwithstanding the verdict will be granted only when the evidence presents no room whatsoever for honest difference of opinion over the factual issue in controversy." Walters v. Getter (1988), 232 Mont. 196, 203, 755 P.2d 574, 578. A court must not grant a motion for judgment notwithstanding the verdict unless it appears that the non-moving party cannot prevail on the issue when the evidence is viewed in the light most favorable to it.

9

Larson v. K-Mart Corp. (1990), 241 Mont. 428, 433, 787 P.2d 361, 364.

As discussed above in issue I, there was ample evidence for the jury to determine that Greytak knew of the dangerous accumulation of propane, then voluntarily and unreasonably exposed herself to the danger. As a matter of law, that is all that was required to justify a finding that Greytak assumed the risk of her injuries. See Krueger, 783 P.2d at 1347. The District Court was correct in denying Greytak's motion for judgment notwithstanding the verdict.

V.

Did the District Court abuse its discretion by granting Greytak a new trial on the grounds that the jury instructions contained an error in law?

The District Court granted Greytak's motion for a new trial. This Court will reverse a district court's order granting a new trial only for a manifest abuse of discretion. Tigh v. College Park Realty Co. (1967), 149 Mont. 358, 362, 427 P.2d 57, 60. We would uphold the District Court's order granting a new trial if it could be sustained on any grounds named by the court. See Tigh, 427 P.2d at 60. The order in this case, however, cannot be sustained.

The sole reason that the court stated in granting a new trial, is that the jury instructions did not clarify that Greytak was barred from recovery if the jury found that she was more than 50 percent responsible for her injuries. The court determined that

10

instruction 23 when read with questions 4 and 5 of the special verdict is inappropriate under Montana law. We disagree.

Instruction 23 stated in pertinent part:

Assumption of the risk on the part of Plaintiff does not bar her recovery unless her responsibility for the injury is greater than the defendants'. However, the total amount of damages which you award will be reduced by the Court according to the percentage of plaintiff's responsibility, as determined by you.

Question 4 of the special verdict stated:

You must now apportion the responsibility for the cause of this accident between Sigrid Greytak and RegO Company/Butler Manufacturing Company. If the total responsibility is 100%, what percentage of this 100% is attributable to Sigrid Greytak and what percentage to RegO Company/Butler Manufacturing Company?

Question 5 stated:

What is the total amount of Sigrid Greytak's damages without regard to your answers to questions 3 and 4?

The court's order does not question whether the evidence was sufficient to support the jury's finding. Rather, the District Court granted a new trial based on errors of law. The order stated that the jury instructions were erroneous because "[nowhere] in [instruction 23] was the jury advised that a finding by them of 50% or more would bar the Plaintiff from recovery." That is simply incorrect.

It follows from instruction 23 that if the jury determined Greytak's responsibility for her injuries was greater than that of the defendants', then assumption of risk on the part of Greytak bars her recovery. Therefore, instruction 23 clearly stated the law.

11

Furthermore, Greytak's counsel did not object to the instructions at trial as is required both for this Court to review them and for the District Court to grant a new trial. See Rule 51, M.R.Civ.P.; Ahmann 766 P.2d at 860; § 25-11-102(7), MCA. In fact, Greytak's counsel proposed instructions that were virtually identical to those he objected to on appeal.

In the post-trial motions Greytak asserted that the jury was hopelessly confused. She contends that the problem could have been solved by adding to question 4 of the special verdict, "If you attribute more than 50% of the responsibility for this accident to Sigrid Greytak, then do not proceed to Question 5 . . . ."

Greytak's counsel, however, did not offer the added language at trial. On the contrary, the special verdict he offered contained language substantially similar to that used by the court.

Section 25-11-102, MCA, provides the grounds for a new trial. At issue in this case is § 25-11-102(7), MCA, which allows a court to vacate a verdict and grant a new trial for an "error in law occurring at the trial and excepted to by the party making the application."

The District Court manifestly abused its discretion in granting a new trial because (1) the jury instructions did not contain an error in law; and (2) plaintiff's counsel did not object to the sufficiency of the instructions at trial.

In summary, the District Court was correct in submitting the issue of assumption of risk to the jury. Greytak is not entitled to a new trial based on errors in the jury instructions. The court

12

correctly ruled that the affidavits were not admissible to impeach the verdict based on a misunderstanding of the jury instructions. The court was correct in denying Greytak's judgment notwithstanding the verdict because there was plenty of evidence for the jury to determine that she assumed the risk. Finally, the District Court abused its discretion by granting a new trial. We reverse the order granting a new trial and direct entry of judgment. We affirm all other issues.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

13